UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 94-6003-Cr-Hurley

UNITED STATES OF AMERICA,

v.

ROBERT LEWIS SMITH,

Defendant.

_____/

FILED by _____ D.C.

SEP 0 7 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION

The Defendant, ROBERT LEWIS SMITH, appeared before the Court on August 6, 2012, and September 5, 2012, represented by counsel, for a final hearing on his alleged violations of supervised release.   The final hearing has been concluded, and this matter is now ripe for review.

In 1994, Defendant was initially convicted of conspiracy to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846, and possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1).   [DE 407].   On March 29, 1996, U.S. District Judge Daniel T.K. Hurley sentenced Defendant to 300 months in prison followed by five years of supervised release.   [DE 676].   In 2008, Defendant's sentence was reduced to 240 months of imprisonment.   [DE 830].   In November 2011, Defendant's sentence was reduced to a period of time served. [DE 914].   Defendant commenced supervised release on or about December 14, 2011.

Defendant is now charged with violating two standard conditions of his supervised release by (1) associating with Kathy Denise Turner, a convicted felon, on or about June

1

1, 2012, without the permission of the U.S. Probation Office and (2) failing to answer truthfully all inquiries by the probation officer in that, on May 7, 2012, Defendant stated he lived at 101 NW 6th Court, Apartment 106, Fort Lauderdale Florida, when in fact evidence and statements from Defendant's family indicated that this was false.   [DE 939].

## FINAL HEARING

Defendant initially denied both alleged violations, and a final hearing on the supervised release violations began on August 6, 2012.   At that hearing, the government called U.S. Probation Officer Dedra Pratt to testify.

Dedra Pratt, a U.S. Probation Officer in the Southern District of Florida since March 1996, testified that she was assigned to supervise Defendant.   Defendant was released from a residential re-entry center on November 23, 2011, and he reported to the Fort Lauderdale probation office on November 28, 2011.   A probation officer went over the conditions of supervised release with Defendant at that time, and Defendant signed a judgment and commitment order memorializing that he understood the conditions.

Probation Officer Pratt then received a call from Ms. Lee at the residential re-entry center because it was believed that Defendant had been associating with Kathy Denise Turner, a convicted felon and fellow inmate at the center.   Probation Officer Pratt met with Defendant on December 20, 2011, and told him that an anonymous female caller had advised the residential re-entry center personnel that Defendant was associating with Ms. Turner.   Probation Officer Pratt told Defendant that, if the two were in fact romantically involved, it was in his best interest to be honest about the relationship so that she could notify the Court and request permission for Defendant and Ms. Turner to continue their relationship.   Defendant stated at that time that he knew Ms. Turner but

2

was not associating with her any longer.

The re-entry center called the probation office on January 6, 2012, to notify probation that the anonymous caller had phoned again to report Defendant's association with Ms. Turner.   Subsequently, Defendant again denied any association with Ms. Turner.

On May 5, 2012, the duty officer at the probation office received an anonymous call that Defendant and Ms. Turner were living together.   Probation Officer Pratt went to Ms. Turner's rented residence, which had not been approved by Ms. Turner's probation officer, and a woman answered the door.   That woman denied being Ms. Turner and said Defendant did not live there.   Probation Officer Pratt later determined that the woman who opened the door was, in fact, Ms. Turner.

On May 7, 2012, Probation Officer Pratt went to Defendant's approved address, 1701 NW 6th Court, Apt. 106, Fort Lauderdale, Florida--an apartment he reportedly shared with his sister.  A woman answered the door and said Defendant did not live there.  Since Defendant's mother lived in a different apartment in the same building, Probation Officer Pratt spoke with her.  Defendant's mother would not say where he lived.  Probation Officer Pratt then called Defendant, and he stated that he did, in fact, live in the apartment (#106) that she had visited.

Defendant visited the probation office on May 11, 2012.   He said that he sometimes spent nights with a female friend.   Defendant would not, however, provide the address or name of the female friend.   Probation Officer Pratt notified Defendant that he could not live with his mother or sister as both apartments were subsidized housing and

Defendant had not obtained permission to live there.[1]

On May 25, 2012, Probation Officer Pratt told Defendant that he was lying about his residence, so she was going to require him to complete community service hours. He initially refused.   However, a few days later, on May 29, 2012, Defendant left Probation Officer Pratt a voice mail stating that he would complete the community service hours for lying about his address.

On June 6, 2012, Probation Officer Pratt met with Ms. Turner's probation officer because Ms. Turner was scheduled to come in to discuss her alleged association with Defendant.   Probation Officer Pratt told Ms. Turner that, if her supervised release included a search condition, the probation department could get her phone records.   Ms. Turner became emotional and finally admitted that she had last spoken to Defendant on June 1, 2012.   Ms. Turner said that she and Defendant wanted to get married.   Ms. Turner signed documents admitting to her association with Defendant.[2]

Probation Officer Pratt then called Defendant and asked him to report to the probation office.   In that telephone call, yet again, Defendant denied the association with Ms. Turner and said that he did not want to discuss the matter.   Defendant reported to the probation office that same afternoon and continued to deny the association with Ms. Turner.   After Probation Officer Pratt continued to confront Defendant about his association with Ms. Turner and the issues regarding his approved address, he became

---

[1] Pratt explained at the hearing that the probation officer who originally approved Defendant's residence (the apartment with his sister) had forgotten to inquire about whether the apartment was subsidized housing.

[2] The Court admitted, over defense counsel's objection, government's exhibit 3, a request for modification of conditions or term of supervision with consent of the offender in Turner's case, case no. 91-6233-CR-Lenard.

upset.  When Defendant refused to discuss Ms. Turner at all, Probation Officer Pratt requested a summons and revocation of supervised release from the Court.

On June 11, 2012, Probation Officer Pratt spoke with Defendant's sister, Ms. Thompson, who said that Defendant lived with her on and off.  Ms. Thompson said that the living arrangement was temporary, and she would not discuss Defendant's alleged relationship with Ms. Turner.

## DISCUSSION

At the conclusion of the August 6, 2012 hearing, the Court scheduled a continuation of the supervised release violation hearing for August 28, 2012.  Due to the closure of the courthouse related to "Tropical Storm Isaac" on August 28, 2012, the continuation of the final hearing was reset to September 6, 2012.  [DE 951].

At the September 6, 2012, continuation of the final hearing, government counsel announced that the government had, subsequent to the August 6, 2012 hearing, turned over voluminous telephone records to Defendant, which evidenced his association with Ms. Turner and established that Ms. Turner's phone was actually in Defendant's name. The prosecutor announced that it was her understanding that Defendant now desired to admit violation 1.  Defendant's counsel confirmed the prosecutor's representation and stated that Defendant desired to admit violation 1--the association with Ms. Turner, a convicted felon, without probation approval.

In light of Defendant's admission to violation 1, the Court requested that the government make a proffer as to the evidence supporting violation 1.  During the proffer, the government asserted that Defendant was the listed subscriber for Ms. Turner's phone number and that the records evidenced a multitude of telephone calls and contacts

5

between Defendant and Ms. Turner over a period of months while he was on supervised release and supposed to have no contact with Ms. Turner.   The prosecutor proffered that Defendant had knowingly associated with convicted felon Kathy Denise Turner on or about June 1, 2012, without permission of the U.S. Probation Office.   Defendant agreed to the government's proffer and admitted under oath that he had knowingly associated with Ms. Turner, a convicted felon, without approval of the U.S. Probation Department. The Court conducted a colloquy with Defendant to ensure that he understood his rights and was admitting to the violation knowingly, intelligently, and voluntarily.   Defendant stated that he was satisfied with his counsel, and that he had sufficient time to review all discovery and discuss the case with his counsel.   Defendant admitted the first violation of supervised release lodged against him, that is, Defendant's association with convicted felon Kathy Denise Turner on or about June 1, 2012, without approval of the U.S. Probation Department.

The Court finds that Defendant understood his rights, including his right to contest the charges, his right to retain counsel or have counsel appointed for him, his right to confront the witnesses against him, his right to written notice of the allegations, his right to disclosure of the evidence against him, his right to appear, present evidence and question any adverse witness, and his right to make a statement and present any evidence in mitigation.   The Court also finds that Defendant's admission to violation 1 was knowingly and voluntarily made with the assistance of counsel.

Additionally, at the September 6, 2012, hearing, the parties made a joint recommendation to the Court that violation 2 be dismissed.

## RECOMMENDATION

In light of the evidence presented, the government's proffer, and Defendant's knowing and voluntary admission, this Court concludes, by a preponderance of the evidence, that Defendant violated a condition of his supervised release by associating with a convicted felon, Kathy Denise Turner, on or about June 1, 2012, without approval of the U.S. Probation Office.

The Court agrees with the parties' recommendation to dismiss violation 2 as the Court finds that the evidence supporting violation 2 is insufficient.

Thus, the Court RECOMMENDS that the District Court find Defendant guilty of violation 1 and dismiss violation 2. The Court further RECOMMENDS that the matter be set down for sentencing before the District Court.

The Clerk is DIRECTED to set this matter before the sentencing calendar of the Honorable United States District Judge Daniel T.K. Hurley.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Daniel T.K. Hurley, within fourteen (14) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C).

DONE and ORDERED and DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this _7th_ day of September, 2012.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE